UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BESTWAY INFLATABLES & MATERIAL CORP., <br><br> Plaintiff, <br><br> v. <br><br> HOLON SUPPLIER and JOWLAWN-US, <br><br> Defendants. | No. 23 C 2286 <br><br> Judge Thomas M. Durkin |

MEMORANDUM OPINION AND ORDER

Defendants Holon Supplier and JOWLAWN-US have filed a motion for injunction bond damages. The Court entered a temporary restraining order on April 12, 2023, *see* R. 25, which was later extended through May 10, 2023. *See* R. 28. Plaintiffs filed a motion for a preliminary injunction on May 5, 2023. *See* R. 38. Defendants opposed the motion. *See* R. 44; R. 55. On May 22, 2023, the Court ordered Plaintiff to file a reply brief by June 1, 2023. Rather than file a reply, Plaintiffs voluntarily dismissed Defendants on May 30, 2023.

On May 22, 2023, Plaintiffs informed Amazon that the TRO had expired and requested the release of the hold on Defendants' account. *See* R. 128-2. On May 30, 2023, Plaintiffs informed Amazon that Plaintiff had dismissed Defendants from the case and again instructed Amazon to release the hold on Defendants' accounts. *See* R. 128-2. On September 20, 2023, Amazon communicated to Plaintiff and Defendants that "the two [Defendants] were processed for release from this TRO back in May. I can see no other legal holds at this time." *See* R. 128-4.

The purpose of an injunction bond is "to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff argues that it brought its claims against Defendants in good faith, so damages are not warranted. But in the Seventh Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983); *see also Triumph v. Ward*, 2011 WL 6754044 (N.D. Ill. Dec. 22, 2011).

The term "prevailing party" is not in Rule 65(c). The Seventh Circuit's reference to "prevailing party" was made in the context of a defendant that prevails on the merits at the end of the case in which a preliminary injunction had been entered. Generally, preliminary injunctions last through the end of a case and a determination that the injunction was wrongful is made in the context of the fact that the defendant prevailed on the merits. By contrast, in the context of a temporary restraining order and subsequent denial of a preliminary injunction, it is possible that the case would proceed to discovery on the merits with the prevailing party yet to be identified. Nevertheless, the defendant in such a case would have suffered damages from the TRO, and the "court's denial of a preliminary injunction and dissolution of the temporary restraining order . . . constitutes a final determination that the plaintiff has been wrongfully enjoined." *Triumph*, 2011 WL 6754044, at *3 (citing cases). In these circumstances, whether the defendant is a "prevailing party" is not relevant to a determination of whether the defendant was "wrongfully enjoined"

2

pursuant to Rule 65(c). Instead, the Court's denial of the preliminary injunction also serves as a finding that the TRO was wrongfully entered, "unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Id.* at *2.

Plaintiff argues that Defendants were not wrongfully enjoined because Plaintiff "satisfied the elements to establish a claim for trademark infringement and Defendants' accounts were properly restrained." R. 128 at 4. But Plaintiff effectively waived that argument when Plaintiff voluntarily dismissed Defendants without addressing Defendants' argument in opposition to the preliminary injunction motion that Defendants' use of Plaintiff's trademarks constituted fair use. By dismissing Defendants rather than addressing the fair use argument, Plaintiff conceded the facts relevant to a determination under Rule 65(c) that Defendants were wrongfully enjoined.

Defendants seek damages through August 17, 2023, arguing that Amazon continues to enforce a freeze of Defendants' products. Plaintiff argues that no damages are warranted after May 30, 2023, when it informed Amazon that Defendants had been dismissed from the case. Plaintiff contends that as of its second message to Amazon on May 30, "counsel assumed the matter was resolved and heard nothing further from Amazon or Defendants." R. 128 at 8. But Defendants have presented evidence that this is incorrect. Although Amazon may have unfrozen Defendants' accounts, Defendants continued to communicate to Plaintiff that Amazon had not unfrozen its products. In other words, Defendants apparently had regained access to the money in their Amazon accounts, but Amazon continued to

prevent Defendants from selling the products Plaintiff had alleged were infringing. As a result, beginning on June 3, 2023, Defendants asked Plaintiff to communicate further with Amazon to seek release of the products. *See* R. 121-1 (email communication among the parties' counsel). Plaintiff at first indicated a willingness to cooperate with this request, but eventually refused. *See id.* at 21 ("If the stores have not been released, let us know and we'll follow-up with Amazon."); *id.* at 18 ("We do not consent to the ASIN's being reinstated because it would allow your client to continue to use our client's trademarked name in their product listing and would effectively provide them with a no-cost license to use our client's trademark.").

Plaintiff now argues that any continuing restriction on Defendants' products "should be directed to . . . Amazon" because "Plaintiff has no control over actions taken or not taken by Amazon." R. 128 at 9. But this argument ignores the fact that the original cause of the restrictions on Defendants' products was the temporary restraining order Plaintiff caused to be entered. True, Plaintiff sent messages to Amazon on May 22 and May 30 informing Amazon that the TRO had been lifted and that Defendants had been dismissed from the case. But Plaintiff waited until September 2023 to contact Amazon after Defendants informed Plaintiff that Amazon had not unfrozen Defendants' products. And that communication from Amazon did not address the freezing of Defendants' products as opposed to their accounts. Plaintiff has a responsibility to return Defendants to the status quo upon the injunction being lifted. Plaintiff cannot close its eyes to ongoing effects of the TRO.

4

Plaintiff brought the lawsuit, caused entry of a TRO, and has a responsibility to remedy its effect once it is no longer in place.

Plaintiff implies that Amazon has continued to freeze Defendants' products for reasons other than activity in this case. But Plaintiff has provided no evidence, such as a communication from Amazon, that this is actually true. Without such evidence, the Court must presume that it is the activity in this case that has caused Amazon to continue to restrict Defendants' products. It is Plaintiff's responsibility to take sufficient action to establish that Amazon has become the superseding cause of the harm to Defendants. Plaintiffs have failed to do this, so they are liable on the bond for that reason. If Plaintiff believes Amazon acted improperly, Plaintiff should address that with Amazon.

Defendants have produced evidence indicating that they have lost a total of $62,771.00 due to their accounts and products being frozen by Amazon. Plaintiff does not contest this evidence. Therefore, the Court orders Plaintiff to pay Defendants $62,711.00.

## Conclusion

Therefore, Defendants' motion for injunction bond damages [122] is granted in the amount of $62,711.00.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: November 8, 2023

5